﻿Citation Nr: AXXXXXXXX
Decision Date: 10/31/19 Archive Date: 10/31/19

DOCKET NO. 190213-17893
DATE: October 31, 2019

ORDER

Entitlement to a total disability rating based upon individual unemployability is denied.

FINDING OF FACT

The Veteran is not unable to secure or follow a substantially gainful occupation due to service-connected disabilities.

CONCLUSION OF LAW

The criteria for a total disability rating based upon individual unemployability (TDIU) have not been met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.340 , 3.341, 4.15, 4.16 (2018).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from June 1965 to December 1968. 

The Board notes that the rating decision on appeal was issued in June 2016. In September 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

1. Entitlement to a total disability rating based upon individual unemployability.

The Veteran seeks entitlement to a TDIU. His representative argues that the Veteran is unable to do his past employment and his age, education level and posttraumatic stress disorder (PTSD) do not allow for current training or additional training to allow for current gainful employment. At the March 2016 Board hearing in connection with the claim of a higher evaluation for PTSD, the Veteran reported that his PTSD caused him to get lost while driving a truck for work. He also reported that when he worked in an auto parts place, he could not remember prices or inventory. The Veteran reported that he did not get along with people at work. 

Total disability is considered to exist when there is any impairment in mind or body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340(a)(1).

A total disability rating for compensation purposes may be assigned on the basis of individual unemployability, that is, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. § 4.16(a). If there is only one service-connected disability, it must be rated at 60 percent or more; if there are two or more service-connected disabilities, at least one disability must be rated at 40 percent or more, and sufficient additional disability must bring the combined rating to 70 percent or more. Individual unemployability must be determined without regard to any non-service-connected disabilities or the veteran’s advancing age. 38 C.F.R. §§ 3.341(a), 4.19 (2018); Van Hoose v. Brown, 4 Vet. App. 361 (1993).

In this case, the Veteran is service-connected for: PTSD, evaluated at 70 percent effective March 8, 2011; bilateral hearing loss, evaluated at 10 percent effective March 25, 2003, at 20 percent effective April 7, 2014, and evaluated at 60 percent effective March 20, 2017; and tinnitus, evaluated at 10 percent effective March 25, 2003. The Veteran’s combined evaluation is 20 percent effective March 25, 2003, and 80 percent effective March 8, 2011. Thus, the Veteran meets the schedular rating thresholds during the appeal period.

As to whether the Veteran is unable to secure or follow a substantially gainful occupation, the Board notes that the Veteran worked from the late 1990’s until 2008 in a supervisory level position at a factory. Other evidence indicates he was a sheet metal worker. The Veteran testified in the March 2016 Board hearing that he was not friends with many people at the factory job and ultimately could not handle the supervisors telling him what to do, so he retired. He did not like the treatment he was receiving in that he was being assigned menial tasks and that the company would not tell him what was going on and he had to find it out from others.

The Veteran further testified in the Board hearing that after his retirement, he wanted to be a truck driver, so he got a commercial driver’s license and drove a truck for several companies. He testified that in one job, he didn’t get along with the dispatcher. He and the supervisor “had it out” on the telephone and he quit. In another job, he was separated because he wasn’t friendly enough to the customers and that he was too slow. He relates this to PTSD. With another job, he had just driven 12 hours a day for 7 months when he did “a stupid thing.” He went to drive a truck handed over from a previous driver and the “steer tires” had a big gouge in them, which should have been taken out of service. However, he drove it and “that was it.” Finally, he went to an auto parts job. He worked there two weeks and they let him go, citing his inability to get along with people and to remember prices on inventory. He disagreed and left.

According to the Veteran’s VA 21-8940 Application for Increased Compensation Based Upon Unemployability (Application), the Veteran stated he became too disabled to work in April 2013, but also indicated that his last date of employment was in September 2013 as a delivery driver. He had held that position since May 2012. The Veteran remarked that he got fired because he made too many mistakes and had a hard time communicating because of his hearing loss. He listed his education as four years of high school and training as a sheet metal worker.

After reviewing the evidence, the Board finds that the Veteran has the residual capacity to secure and follow a substantially gainful occupation. The Veteran’s PTSD does impair his ability to get along with supervisors and co-workers but does not preclude it. The Veteran held a long-term job for many years, retiring in 2008, and then became a commercial truck driver. Although the Veteran’s tenure at the commercial truck driver jobs is relatively short, he has demonstrated the ability to obtain new employment after leaving a job. The Veteran’s employment history does not indicate any significant impairment due to his hearing loss. The Board finds the overall 80 percent evaluation covers the reduction in earnings capacity associated with the impairment to the Veteran’s occupational functioning.

Specifically, the Veteran’s main assertions as to unemployability are that he cannot get along with people, he is irritable, he is slow due to PTSD, he has difficulty remembering things and concentrating, and he has difficulty hearing conversations. 

The Board acknowledges the Veteran’s reports in psychological evaluations such as the February 2013 VA examination and the July 2014 private examination of intrusive memories, anger, sleep disturbances, avoidance of others, and significant difficulties getting along with supervisors, co-workers, and those who work for him. The Board acknowledges that a February 2013 VA examination reported the Veteran had attempted suicide in July 2012 and that the Veteran would often get angry. However, later reports in March 2017 show that irritability “remains at bay” and the Veteran was sleeping through the night. In June 2017, the Veteran reported still struggling with lack of patience, though it was aggravated by non-service-connected pain. The Veteran himself in the Board hearing indicated that medication reduces his anger. Thus, in relation to the time periods when the Veteran was working and in relation to the earlier times in the appeal period, the Veteran’s irritability symptoms have improved (although not necessarily overall PTSD symptoms), although he still struggled with it sometimes daily. The improvement in irritability symptoms would logically only improve the ability to maintain a job.

Additionally, symptoms such as attention, concentration, and memory in later treatment records show his memory, attention, concentration and thought processes were within normal limits. See, for example, in February 2016, April 2016, July 2016, August 2016, and January 2017. 

When he was working, the Veteran was able to maintain steady employment through 2008 when he retired, and then he pursued a new career. In his hearing testimony, he gave the impression that this career was optional. He has indicated throughout treatment records that he is retired. In this new career as a truck driver, he was able to regularly find new employment. He voluntarily stopped working and has not looked for employment since his last job in September 2013, according to his Application. 

The private psychiatric examination was performed in 2014. The private examination did not take into consideration the treatment records after 2014, which show memory and concentration within normal limits and show that irritability was at bay or improved. Even still, the examiner did not opine that the Veteran could not work, although the Board notes some significant memory deficits were present in the private evaluation and in the disability benefits questionnaire, the examiner stated that the Veteran was unable to keep a job. The Board finds the totality of the evidence shows the Veteran is not prevented from securing another job and maintaining employment at the next job. 

Furthermore, the Board notes that there is insufficient evidence to show that the Veteran would be unable to secure or follow occupations requiring less interaction with others and a 40 hour workweek, rather than a 70 hour workweek which the Veteran noted in some of his past employment on his Application.

Hearing loss does not significantly contribute to the Veteran’s impairment in the ability to secure or follow a substantially gainful occupation. In February 2016, a VA audiologist reported that the Veteran’s hearing loss was symmetrical until 2009 when he experienced a sudden decrease in left ear hearing loss to the point that a left hearing aid was no longer beneficial to him. The audiologist reported that the Veteran did not wear the right ear hearing aid very often because he could hear without it and a clinician noted that the Veteran could understand conversational speech without the use of his right hearing aid. The audiologist opined that the Veteran is able to communicate effectively for medical evaluations and treatment, even without the use of his current right hearing aid. In a work setting, he may have difficulty understanding speech clearly in the presence of significant background noise, but with the use of his right ear hearing aid and some communication strategies, he could function in an occupational environment with no significant impact from his hearing loss and tinnitus. The Board finds this opinion probative as to the impact on the Veteran’s occupational functioning because it is well-reasoned, consistent with the evidence of record, and is consistent with common sense.

His attorney has argued that the Veteran is unable to engage in his past employment and his age, education level and posttraumatic stress disorder (PTSD) do not allow for current training or additional training to allow for current gainful employment. The Board finds that the argument is unpersuasive. 

First, the Veteran’s advancing age may not be considered in determining whether a TDIU is warranted. 38 C.F.R. §§ 3.341, 4.16, 4.19. In other words, according to pertinent regulation, “unemployability, in service-connected claims, associated with advancing age or intermittent disability, may not be used as basis for a total disability rating.” 38 C.F.R. § 4.19. For this reason, the argument that the Veteran cannot learn a new job because of advancing age is not for consideration.

Next, with regard to the Veteran’s inability to complete training necessary for a different substantially gainful occupation, the Board finds that the Veteran’s supervisory role indicates he has marketable skills such as supervision which would assist him in a new occupation. Furthermore, unskilled occupations would require little additional training. The Veteran’s slowness in one particular job is not necessarily an obstacle in other substantially gainful jobs. 

The Board finds there are substantially gainful occupations which would be compatible with the Veteran’s level of education, special training, previous work experience and limitations from his service-connected disabilities. These jobs would be unskilled positions that minimize interaction with supervisors, co-workers, and the public, although rote interaction with the public, such as taking tolls at a toll booth, may occur. “For a veteran to prevail on a claim based on unemployability, it is necessary that the record reflect some factor which takes the claimant’s case outside the norm of such veteran.” Van Hoose, 4 Vet. App. at 363. Such a factor is not present here. 

Because the Board finds the Veteran is not unable to secure or follow a substantially gainful occupation, the claim must be denied.

 

 

Emily Tamlyn

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Rocktashel, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.